## HARVEY *v.* LOWRY.

[No. 26,263.   Filed December 7, 1932.]

*Blessing & Stevenson* and *George E. Easley,* for appellant.

*Horner & Thompson,* for appellee.

TREANOR, C. J.—Appellant, Harvey, sued appellee to recover damages for an alleged breach of a covenant contained in a warranty deed. For the purpose of dis-

posing of this appeal we need consider only whether the trial court erred in its conclusions of law. There is no contention that the findings of fact were not supported by the evidence and insofar as they are material may be summarized as follows:

(1) One Anderson was the owner of a judgment for $2,988.83 which had been recovered against the appellant in the Hendricks Circuit Court. On Dec. 27, 1920, a transcript of this judgment was filed in the office of the Clerk of the Marion Circuit Court of Marion County and properly recorded. On Dec. 27, 1920, appellant was the owner of certain real estate in Marion County.

(2) On Aug. 22, 1921, the appellant conveyed the real estate in question to P. K., subject to incumbrances but with no covenant to discharge the same.

(3) On Sept. 3, 1921, P. K. conveyed the real estate to V. D. B., who made no covenant to discharge encumbrances.

(4) On Sept. 30, 1921, execution was issued on the Anderson judgment against appellant and the sheriff of Marion County levied upon and sold the real estate in question, on Dec. 10, 1921, Anderson himself buying it in for the sum of $2,325.00. The sheriff of Marion County returned the execution partly satisfied to the clerk of the Hendricks Circuit Court and executed and delivered to Anderson a sheriff's certificate of sale of the real estate.

(5) On June 20, 1922, within the year of redemption, V. D. B. conveyed the real estate to Lowry, the appellee, who knew that Anderson held a sheriff's certificate of sale.

(6) The deed of conveyance to appellee contained the following: "This conveyance is subject . . . to the payment of a certain judgment of $3,000.00 more or less in favor of Howard Anderson . . . and the grantee as-

sumes and agrees to pay all of said mentioned encumbrances as a part of the purchase price herein."

(7) The judgment recited in the deed was the one rendered against appellant in the Hendricks Circuit Court and was only partially satisfied.

(8) On July 5, 1922, appellee purchased from Anderson the sheriff's certificate of sale for the sum of $2,325.00 and took from him the following receipt:

July 5, 1922.

"I hereby acknowledge receipt of a note dated June 23, 1922, in the sum of $3,003.60 signed by J. J. Lowry of Winamac, Indiana, and paid me in consideration of my releasing in full all claims or interest of any kind in the property located at 2142 N. Delaware St. and legally described as Lot No. 37 of Morton Place addition to City of Indianapolis, Indiana.

"I hereby certify that the following claims are all that are held either by or thru me against the property, and that they have been fully paid and satisfied:

| | |
|---|---:|
| Judgment, | $2,325.00 |
| Note, | 300.00 |
| Taxes, | 98.00 |
| Interest on above notes, | 175.00 |
| Interest to date, | 105.60 |

(Signed) Howard Anderson."

(9) On June 24, 1922, the clerk of the Hendricks Circuit Court issued execution to the sheriff of Hendricks county on the balance of the Anderson judgment which remained unsatisfied of record. On the same date the sheriff levied upon certain real estate in Hendricks county which belonged to appellant, and, to prevent a sale, the appellant paid the balance in the sum of $1,113.50.

(10) After demand on appellee for the payment of the aforesaid balance the appellant brought suit to collect same from appellee.

The trial court found the law to be:

(1)  That the law is with the defendant and that plaintiff take nothing by his complaint.

(2)  That defendant recover his costs.

It is too well settled to require either citations or discussion that a grantee, who, as a part consideration for a conveyance, assumes and agrees to discharge a lien upon the land conveyed to him, becomes personally liable to the holder of the lien if the grantor is personally obligated to discharge the lien.  It is equally well settled that the holder of the lien can sue the grantee to enforce the personal liability; and that the grantee's promise is not within the Statute of Frauds.  There is a conflict of authority when the grantor is not personally liable for the lien debt; but we consider that the rule above stated is the established rule in Indiana even though the grantor is not personally obligated to the holder of the lien.  In short, as stated in *Birke* v. *Abbott* (1885), 103 Ind. 1, 1 N. E. 485, ". . . the liability of a grantee who assumes prior encumbrances depends upon his contract, and not upon the liability of his grantor."  This court has treated the foregoing cases as instances of third party contracts; and, consistently with our rules respecting contracts made for the benefit of third parties, has held that the holder of the encumbrances may sue the grantee.

"Since the decision of *Bird* v. *Lanius,* 7 Ind. 615, it has been the settled rule, under our code, that when one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, such third person may enforce the same if not rescinded before acceptance.  *Waterman* v. *Morgan,* 114 Ind. 237, and cases cited; *Henderson* v. *McDonald,* 84 Ind. 149, and cases cited; *Gwaltney* v. *Wheeler,* 26 Ind. 415, 417.

"The rule at law was otherwise based upon the ground that there was no privity of contract be-

tween parties. *Farlow* v. *Kemp,* 7 Blackf. 544, 546. It is not necessary that any consideration move from the third party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party. *Gwaltney* v. *Wheeler, supra,* 417; *Miller* v. *Billingsly,* 41 Ind. 489; *Mathews* v. *Ritenour,* 31 Ind. 31, 33-34." *Ransdel* v. *Moore* (1899), 153 Ind. 393, 405, 53 N. E. 767. See also *Jones et ux.* v. *Parks* (1881), 78 Ind. 537.

On the basis of the facts, as found by the trial court, the defendant, Lowry, was personally obligated to discharge the encumbrances on the real estate which had been conveyed to him, and the judgment creditor, Anderson, had a right to recover against appellee Lowry for the balance of his judgment against appellant, Harvey. When Lowry purchased the sheriff's certificate of sale from Anderson within the year of redemption the transaction amounted to a redemption and the legal consequence was to vacate and set aside the sheriff's sale of the real estate and to restore the same and the title thereto precisely as they were held prior to the sale; (*Caley* v. *Morgan* [1888], 114 Ind. 350, 357, 16 N. E. 790; *Taggart* v. *McKinsey* [1882], 85 Ind. 392, 394, and cases there cited) and if Anderson had not executed his release to Lowry of all interest in the real estate he could have subjected the property to a second sale. (§834 Burns Ann. Ind. St. 1926, Acts of 1881, special session, ch. LXXXVIII, p. 593; *Hervey* v. *Krost* [1888], 116 Ind. 268, 271, 19 N. E. 125; *Mitchell* v. *Ringle* [1898], 151 Ind. 16, 18, 50 N. E. 30.) But granting that the judgment creditor. Anderson, could have recovered from Lowry the balance due on the judgment, it does not necessarily follow that the appellant, Harvey, could recover a personal judgment from Lowry. As already pointed out, the claim of Anderson against Lowry is a contractual one and rests upon Lowry's express cove-

nant to discharge the encumbrance held by Anderson. It was a contract for the benefit of Anderson and not for the benefit of the appellant. In order for a person who is not a party to a contract to enforce provisions for his benefit it is necessary that the actual parties intended the provisions to be for the benefit of this third person.

> "It is not denied that a third person, for whose declared benefit a contract was made, may sue to enforce the same. But it is only those whom the contract expressly declares are the beneficiaries and real parties in interest as when the obligation runs to and is for the benefit of a designated third person or a class. In such cases the promisee is taken to be the mere agent or trustee of the designated actual beneficiary." *Reynolds et al.* v. *Louisville, etc., Ry. Co.* (1896), 143 Ind. 579, 629, 40 N. E. 410.

> "It is not our purpose to hold that a contract may not be made for the benefit of a third person although such person may not be specifically mentioned, but we do hold that a contract, to have such effect, must clearly evidence a distinct intention to benefit such third person." *Irwin's Bank* v. *Fletcher Sav. & Trust Co.* (1925), 195 Ind. 669, 692, 145 N. E. 869.

As indicated by the foregoing excerpts a "third party" does not gain the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor. Consequently, we conclude that the appellant in this case has no contractual claim against Lowry by reason of the personal liability assumed by Lowry by his covenant in the deed.

Appellant, however, seems to rely upon the proposition that by reason of the appellee's agreement to discharge the encumbrances a principal-surety relationship arose and appellee, the grantee Lowry, became a principal and the remote grantor, the appellant, became a surety, and since the

appellant has paid the balance due on the judgment he is subrogated to Anderson's claim against the defendant. It is, of course, important to note that an equity of subrogation does not in itself create or define a legal claim. A surety's equity of subrogation merely entitles him to take advantage of any remedies which are available to the creditor for the purpose of enforcing his claim against the principal. The surety's right against his principal is his right to reimbursement for any loss which he has suffered as a result of his obligation as surety; and for the purpose of enabling him to obtain reimbursement he is entitled by reason of his equity of subrogation to utilize the remedies which the creditor might have utilized against the principal. We do not believe, however, that the appellant stands in the relation of surety to the appellee, Lowry. The law recognizes the principal-surety relationship only when a creditor holds two legal obligations, running from two different obligors but comprehending one claim; which claim, as between the two obligors, ought to be satisfied by one to the complete discharge of the other. Ordinarily, the surety relationship rests upon a contract by which the surety expressly binds himself "to answer for the debt, default or miscarriage of another." But if the law finds two parties in such a relation that they are both bound to discharge an obligation to a third party, which obligations, as between the two parties, should fall ultimately upon one, the law attaches at least some of the legal consequences of a principal-surety relationship. So when a grantee, by a covenant in a deed, assumes and agrees to pay an encumbrance debt which his grantor is personally bound to pay, we have the essentials of a principal-surety relation and the law treats the grantee as principal and the grantor as surety. (*Todd* v. *Oglebay* [1902], 158 Ind. 595, 599, 64 N. E. 32.) But if the grantor is not personally obli-

gated to pay the encumbrance debt one of the essential factors is missing and the promise of the grantee to pay the encumbrance can not create a situation in which both the grantor and grantee are obligated to discharge a claim to a third person, the discharge of which should ultimately fall upon the grantee. As between the grantee and grantor the grantee is immediately and solely liable to discharge the obligation; and the third party can not assert a claim against the grantor personally. In the instant case no principal-surety relationship arose between the appellee Lowry and his immediate grantor for the reason that his grantor was not personally obligated to discharge the encumbrance against the real estate. Since there was no continuous chain of principal-surety relation running from the grantee, Lowry, to his remote grantor, the appellant, there is no basis in the successive conveyances for the creation of a principal-surety relation between the appellant and appellee.

If appellant's grantee and each successive grantee had assumed the payment of the encumbrances for which appellant was personally liable the judgment creditor, Anderson, could have sued any one of appellant's successors in title and the appellee, Lowry, being the last grantee, would have been primarily liable.

"Each successive grantee who assumes the payment of an encumbrance necessarily remains bound to his grantor until the encumbrance has been removed, unless otherwise released from the obligation, and so long as not discharged or released the contract necessarily operates in favor of the holder of the encumbrance, who, if he chooses, may accept and enforce it; and though each grantee has bound himself by a separate agreement, yet, as all have assumed the payment of the same debt, they may be sued in one action, the last being held primarily liable and each in the inverse order of his contract." *Carnahan* v. *Tousey* (1884), 93 Ind. 561, 563.

If, under the foregoing assumed state of facts, the appellant had paid the amount of the judgment he would have been entitled to recover judgment against any one or all of his successors in title. Under our liberal practice he could have sued and recovered judgment against Lowry since Lowry was the last grantee and would have been primarily liable as between himself and the prior grantees. But under the facts of the instant case there is no continuous chain of mesne assumptions of personal liability upon which to predicate a primary liability against the appellee, the last grantee, in favor of the appellant, a remote grantor.

If any personal liability whatever exists between Lowry, the remote grantee, and Harvey, the remote grantor, it must arise directly from Lowry's covenant in the deed and not from a legal relation created by the mesne conveyances. But we construe the covenant as a promise for consideration only to Lowry's grantor, to perform an act for the benefit of the judgment creditor. Apparently the judgment debtor, appellant Harvey, would have been benefited if Lowry had paid the judgment; but no facts were found by the trial court which gave the appellant any legal ground to compel appellee Lowry to pay the judgment. If we should assume that Lowry made his covenant for the benefit of Harvey we should then be compelled to treat his promise, as one to answer for the debt of another (i. e. Harvey) and the relation of Lowry to Harvey would be that of surety and not principal. On the basis of the facts, as found by the trial court, we must conclude that the transactions between Lowry and his grantor and Anderson, the judgment creditor, were independent of the Anderson-Harvey relation and solely to subserve interests of Lowry, Anderson, and Lowry's grantor. We find no facts which would make it inequitable as between the appellant and appellee for the appellant Har-

vey to pay the balance of the judgment after having had the benefit of the proceeds of a sale of the land; and especially so since Lowry actually furnished the proceeds.

A mortgagor-grantor, who has conveyed land subject to the mortgage encumbrance but without the assumption of personal liability by the grantee, can have recourse to the land for the purpose of reimbursing himself in case he has been compelled to pay the amount of the mortgage. *Shuler* v. *Hardin*, 25 Ind. 386; *Atherton* v. *Toney*, 43 Ind. 211; Jones, Mortgages, 8th Ed., §911. In that situation the law treats the land as if it were a surety ("real surety" as it is sometimes called. See Stearns on Suretyship, 3rd Ed., §4), and as, in effect, constituting a fund which is primarily responsible for the discharge of the mortgage lien. So in this case, if there is anything analogous to a principal-surety relationship it is in the relation which exists between the appellant, the remote grantor, and the land which was conveyed by mesne conveyances to the appellee, Lowry, subject to the judgment encumbrance. As between the appellant and the property, the property constituted a source of reimbursement to appellant. He stood by and allowed the property to be sold and the proceeds of the sale to be applied to the reduction of the personal judgment against him. The result was the same as if he had paid the judgment, which he was personally obligated to do, and had then subjected the property to a sale to reimburse himself.

The trial court did not err in its conclusions of law. Judgment affirmed.